**STATE of Iowa, Plaintiff–Appellee,**

v.

**John Christopher CONGER, Defendant–Appellant.**

No. 87–1330.

Court of Appeals of Iowa.

Oct. 20, 1988.

David D. Dixon of Heslinga, Heslinga, Dixon & Grotewold, Oskaloosa, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Pamela Greenman Dahl, Asst. Atty. Gen., and Martha Mertz, Marion Co. Atty., for plaintiff-appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

DONIELSON, Presiding Judge.

Following a jury trial, defendant appeals his conviction for theft in the second degree and for operating while intoxicated.

These charges arose out of an accident where defendant struck a deputy sheriff's patrol car. Defendant claims the district court erred by: 1) denying his motion to suppress so that his conviction was improperly based on statements made while he was not competent; and 2) instructing the jury in a fashion that allowed the jury to convict him of theft with less than a unanimous verdict.

Defendant was involved in an automobile accident with a deputy sheriff's patrol car on January 31, 1987. Conger was found hitchhiking an eighth of a mile from the accident scene. He had facial wounds and was taken to the scene to be questioned. Conger gave various explanations for his presence. He went into shock and quit breathing. He was given mouth-to-mouth resuscitation by a nurse who was at the scene. At the hospital, Conger admitted to a friend that he had hit a patrol car. A wrecked pickup truck was found near the scene of the accident with splatters of defendant's blood type on it. The pickup was found to have been stolen earlier that evening. Defendant was charged with operating while intoxicated, in violation of Iowa Code section 321J.2, and theft in the second degree, in violation of Iowa Code section 714.2(2).

At trial, Conger testified that he had been hitchhiking and was picked up by the driver of the pickup. The jury returned a verdict of guilty on both counts. Conger now appeals his conviction. In reviewing this claim, we make an independent de novo review of the totality of circumstances. *State v. Hodges*, 326 N.W.2d 345, 347 (Iowa 1982).

Defendant contends the trial court erred by denying defendant's motion to suppress so that his conviction was improperly based on statements made while he was not competent. Conger claims that statements he made at the scene of the accident and at the hospital should have been suppressed because of his injuries and physical and mental state. He argues that the statements were not voluntary because his capacity for self-determination was impaired.

These statements conflicted with the testimony Conger gave at trial.

## I.

The court in *State v. Hodges*, 326 N.W.2d 345, 347 (Iowa 1982), outlined many of the principles that apply to inculpatory statements. The test for determining the admissibility of inculpatory statements is voluntariness. *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037, 1057 (1961). This court examines the totality of the circumstances to determine whether officers have exercised coercion so as to render statements involuntary.

The totality of the circumstances is a test which encompasses many factors based on the individual case. *State v. Cullison*, 227 N.W.2d 121, 127 (Iowa 1975). Both the characteristics of the accused and the details of the interrogation process are considered. *Id.* The court determines the facts surrounding the inculpatory statement, assesses their psychological impact on defendant, and evaluates the legal significance of defendant's responses. *Id.* The State has the burden to show by a preponderance of the evidence that the statement was voluntary. *State v. Snethen*, 245 N.W.2d 308, 311 (Iowa 1976).

There are many factors to be considered under the totality of the circumstances, but no one factor is determinative. *Hodges*, 326 N.W.2d at 348. Among these factors are:

> The defendant's knowledge and waiver of his *Miranda* rights, the defendant's age, experience, prior record, level of education and intelligence, the length of time defendant is detained and interrogated, whether physical punishment was used, including the deprivation of food or sleep, defendant's ability to understand the questions, the defendant's physical and emotional condition and his reaction to the interrogation, whether any deceit or improper promises were used in gaining the admissions, and any mental weakness the defendant may possess.

*State v. Whitsel*, 339 N.W.2d 149, 153 (Iowa 1983). Coercive police activity is a necessary predicate to finding that a confession is not voluntary within the meaning of the due process clause of the fourteenth amendment. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 484 (1986).

The district court overruled defendant's motion to suppress statements made to Clyde Klave, Roger Mott, Roberta Bettis, and Phillip Bishop. We do not need to consider statements made to Clyde Klave because defendant failed to preserve error. Klave testified about these statements at trial only upon cross examination by defense counsel. Furthermore, the statements were not inconsistent and thus not prejudicial.

The other statements at issue were obtained at the scene of the accident and later at the hospital. Defendant first came into contact with law enforcement officials when he was picked up hitchhiking near the scene of the accident which was under investigation. The officer noticed facial injuries on Conger and asked him to accompany him back to the accident scene.

At the accident site, another officer, Deputy Mott, noticed Conger's injuries and asked him what had happened. Defendant said he was riding in a blue Nova and was thrown out. Two others who were riding in the vehicle left without the defendant. Mott testified that he was mainly concerned about defendant's injury and did not consider him a suspect at this point. Mott said that the defendant understood the question asked and gave understandable responses. Defendant's physical condition at this point included some blood on his face, but no profuse bleeding.

At the time Deputy Mott questioned Conger, there was no coercion. Defendant voluntarily answered the questions about his injuries. These statements were the products of a rational intellect and a free will. *State v. Hatter*, 414 N.W.2d 333, 338 (Iowa 1987).

The second group of statements were made to a nurse who happened upon

the scene, Roberta Bettis. At one point she administered mouth-to-mouth resuscitation to restore defendant's breathing. Then to check his consciousness, Bettis began asking him questions such as his name and address. Bettis testified that he was awake and responding to her questions. She also said that Conger volunteered some additional statements about being in a lot of trouble and that the girls left him there.

Nurse Bettis was employed by John Deere and only appeared at the scene by chance. She was responding to defendant's medical needs when he spoke to her. These statements were not the result of coercive police action. These statements were not violative of the due process clause. *Connelly*, 479 U.S. at 167, 107 S.Ct. at 522, 93 L.Ed.2d at 484. Therefore these statements were properly admitted.

■ The last group of statements were made by the defendant while at the hospital. Conger told his friend, "I hit a patrol car." Deputy Phillip Bishop overheard this statement when standing three to four feet from defendant. Deputy Bishop also overheard defendant tell a woman that two guys picked him up and that he fell out of the car when the accident happened.

Both of these statements were volunteered by defendant. The deputy observed that defendant understood and made appropriate responses to questions being asked by others. Bishop was in plain sight and dressed in his uniform. It cannot be said that these statements were the result of "compelling influences, psychological ploys, or direct questioning." *Arizona v. Mauro*, 481 U.S. 520, 529, 107 S.Ct. 1931, 1936, 95 L.Ed.2d 458, 468 (1987). Thus his statements were not the result of coercive police interrogation.

We find defendant's statements were voluntary and were properly admitted by the district court.

## II.

Defendant also contends the court erred by instructing the jury in such a fashion that allowed the jury to convict the defendant of theft with less than a unanimous verdict. The trial court instructed the jury on both theft by taking, Iowa Code section 714.1(1) (1987), and theft by exercising control over stolen property, Iowa Code section 714.1(4) (1987).

The standard to be applied in this situation was approved in *State v. Duncan*, 312 N.W.2d 519 (Iowa 1981). If "substantial evidence is presented to support *each* alternative method of committing a single crime, and the alternatives are not repugnant to each other, then unanimity of the jury as to the mode of commission of the crime is not required." *Id.* at 523.

■ The first step is to determine whether the statute defines a single offense which may be committed in more than one way or instead defines multiple offenses. *State v. Bratthauer*, 354 N.W.2d 774, 776 (Iowa 1984). This is a question of legislative intent. *Id.*

■ Iowa Code section 714.1(1) through (8) lists definitions of theft. Any one of the enumerated situations results in the commission of theft. These subparagraphs clearly define alternative conduct that in a single occurrence can result in only one conviction of crime. *See State v. Williams*, 328 N.W.2d 504, 506 n. 3 (Iowa 1983).

The second step of the inquiry is to determine if the alternative modes are consistent with and not repugnant to each other. *Bratthauer*, 354 N.W.2d at 776. This step involves application of the constitutional test to ensure that it is not a denial of due process for the legislature to equate the concepts as alternate ways of establishing the actus reus of a single crime. *Id.* at 777.

■ The two alternatives used in this case are consistent in that they merely describe different situations that are considered theft. Subparagraph (1) is relevant if the person took the property with the intent to deprive the owner thereof. Subparagraph (4) involves the person who exercises control over the stolen property, that is one who has the property at some point beyond the initial taking. A person cannot commit theft by taking without also

exercising control over the property, so the two are not inconsistent. The legislature has determined that both situations are worthy of criminal sanctions. These two alternatives are not inconsistent or repugnant in that they represent different points of time within one crime.

Finally, substantial evidence was presented to support each alternative. Defendant testified that he had no car and could not obtain a ride from his friends. Defendant decided to hitchhike and claims the pickup which was later found wrecked and abandoned, gave him a ride until the male driver was in the accident.

Other evidence revealed that the pickup was stolen from the house next to where defendant was living. It was taken one hour after defendant left the bar. The collision occurred approximately one-half hour after it was stolen. The damaged pickup had blood stains on the steering wheel which matched the defendant's blood type. There was no indication of trauma on the passenger's side. A single set of tracks were found in the mud leading away from the pickup. Defendant's shoes had mud on them.

This evidence is sufficient for a jury question to be engendered on all the elements. *Duncan*, 312 N.W.2d at 522. A reasonable juror could conclude either the defendant took the vehicle himself or exercised control over it, knowing it was stolen. Therefore, we find the jury was properly instructed on the alternative methods of committing theft.

Based on the totality of the circumstances, we hold defendant was not denied his right to a unanimous verdict by the failure of the trial court's instruction to require jury unanimity on one of the alternative means for committing the offense. The conviction of the defendant is affirmed.

AFFIRMED.