# IN THE COURT OF APPEALS OF IOWA

No. 16-0629
Filed August 2, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RANDY LEE BARNES JR.,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Madison County, Brad McCall, Judge.

Randy Lee Barnes Jr. appeals following judgment and sentences entered upon his convictions for theft and eluding. **CONVICTIONS AFFIRMED ON CONDITION, SENTENCES VACATED, AND REMANDED WITH INSTRUCTIONS.**

Mark C. Smith, State Appellate Defender, and Maria L. Ruhtenberg, Assistant Appellate Defender, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., Mullins, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**MAHAN, Senior Judge.**

Randy Lee Barnes Jr. appeals following judgment and sentences entered upon his convictions for second-degree theft by exercising control over stolen property, in violation of Iowa Code sections 714.1(4) and 714.2 (2015), and eluding while participating in a felony, in violation of section 321.279(3), each offense committed as a habitual offender, in violation of section 902.8.[1]

While we find substantial evidence exists to support the jury's findings of guilt, the trial court misstated the maximum possible sentences Barnes faced pursuant to the habitual-offender enhancement, which undermines our confidence in the voluntary and knowing nature of the defendant's rejection of the State's plea offer, as well as the defendant's waiver of a trial on the habitual-offender allegations. In addition, the trial court did not provide any reasons for imposing consecutive sentences. We therefore conditionally affirm the convictions, vacate the sentences, and remand with instructions.

**I. Background Facts.**

On November 6, 2015, Madison County Sheriff Jason Barnes received a report that a truck with a man apparently asleep inside had been parked in front of storage units for more than two hours. The sheriff responded to the report and found the vehicle with Randy Lee Barnes Jr. inside.[2] Barnes and the sheriff briefly spoke, the sheriff went back to his vehicle, and Barnes pulled out of the storage unit's parking lot and left the area. In running the plates of the truck, the

---

[1] The State asserted Barnes had pled guilty to possession of methamphetamine in 1997 and to possession of pseudoephedrine in 2002.
[2] Because the sheriff and the defendant share a last name, further references to Sheriff Barnes will be as "sheriff" and the defendant will be referred to as "Barnes."

sheriff learned the vehicle had been reported taken on October 29 from a community about three hours away. The sheriff followed Barnes, and a chase ensued, eventually involving numerous law enforcement agencies, including the Madison County Sheriff's Office, Warren County Sheriff's Office, Dallas County Sheriff's Office, Iowa State Patrol (including a state patrol airplane), Iowa Department of Natural Resources, and Earlham Police Department. During the pursuit, the uniformed law enforcement officers were in marked patrol vehicles and their lights and sirens were activated. Barnes continued to fail to stop for the officers or for stop signs, and his vehicle reached speeds in excess of 110 miles per hour on gravel roads, which have a maximum speed limit of fifty-five miles per hour. Warren County deputies attempted to setup a roadblock with their vehicles, but Barnes drove down into a ditch to bypass the roadblock. Officers attempted to use stop sticks to deflate the truck's tires, two of which Barnes avoided. Barnes failed to slow down when approaching other vehicles (including a road grader) and when crossing highways or other roads. After more than thirty minutes, the police were successful in using stop sticks on the truck to deflate two of the truck's tires, and Barnes pulled off of the road and surrendered.

Police confirmed the truck did not belong to Barnes, although Barnes had his property in the truck bed and inside the truck. During a recorded jail telephone call, Barnes told his former girlfriend that "the truck was hot" and "that's why [he] left" the storage units because he "wasn't going to sit there and let [the police] run the plates."

Barnes was charged with second-degree theft by exercising control over stolen property, in violation of Iowa Code sections 714.1(4) and 714.2, and

eluding while participating in a felony, in violation of section 321.279(3),[3] each offense committed as a habitual offender.

In a pretrial filing seeking a partial judgment of acquittal, the defense argued in regard to the eluding while participating in a felony, "The only question that is left is whether or not the defendant was participating in a felony at this time." Relying on *State v. Philo*, 697 N.W.2d 481 (Iowa 2005), the defense noted the legislature, in Iowa Code section 702.13, has defined "participating in a public offense" as the period commencing with the first act done directly toward the commission of the offense and for the purpose of committing that offense and terminating when the person has been arrested or has withdrawn from the scene of the intended crime and has eluded pursuers, if there be any. He argued the offense of theft of a motor vehicle had been completed before the eluding occurred here, which required a dismissal of the charge. The district court denied the motion, noting the offense charged here—theft by possession or control of stolen property, pursuant to section 714.1(4)—was not under the same

---

[3] Section 321.279(3) provides:

> The driver of a motor vehicle commits a class "D" felony if the driver willfully fails to bring the motor vehicle to a stop or otherwise eludes or attempts to elude a marked official law enforcement vehicle that is driven by a uniformed peace officer after being given a visual and audible signal as provided in this section, and in doing so exceeds the speed limit by twenty-five miles per hour or more, and if any of the following occurs:
>
> (a) The driver is participating in a public offense, as defined in section 702.13, that is a felony.

Section 702.13 provides in turn,

> A person is "participating in a public offense," during part or the entire period commencing with the first act done directly toward the commission of the offense and for the purpose of committing the offense, and terminating when the person has been arrested or has withdrawn from the scene of the intended crime and has eluded pursuers, if any there be.

statutory provision as that in the *Philo* case—theft by taking, pursuant to section 714.1(1).

Before trial began, a record was made as to the plea offered to Barnes by the State:

> [PROSECUTOR] MR. ANDERSON: Mr. Barnes has been charged with theft in the second degree as a habitual offender and felony eluding as a habitual offender.
>
> The State made a plea offer yesterday that if Mr. Barnes agreed to plead guilty to theft in the second degree without the habitual offender enhancement and eluding as an aggravated misdemeanor, if he agreed to prison terms on those sentences and that those sentences run consecutive, the State would be willing to make that offer to him. That offer was rejected yesterday.
>
> THE COURT: All right. So the State has offered to have Mr. Barnes plead to one class "D" felony, one aggravated misdemeanor, and agree to consecutive prison terms?
>
> MR. ANDERSON: Correct, for a total of seven years with no minimum on it.
>
> THE COURT: All right. Okay. And, Mr. Hoover [defense attorney], have you had an opportunity to discuss that offer with your client?
>
> MR. HOOVER: I went to the jail last night, Your Honor, and discussed that, that offer with my client. I discussed with him the benefits of taking the offer, as well as I guess what potentially could happen at trial.
>
> After that discussion, I asked my client if he was willing to accept the plea offer and he indicated to me that he did not wish to accept that plea offer.
>
> THE COURT: All right. Mr. Barnes, you understand the terms of the offer that's been made by the State?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: And you understand that if you accepted this plea offer, you would be pleading guilty to one class "D" felony, one aggravated misdemeanor, and agreeing to a five-year prison sentence and a two-year prison sentence to be served consecutively to one another, in other words, a seven-year prison term. That prison term would not have any mandatory minimum sentence attached to it. You understand that?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: You understand if you go forward and you are convicted of both offenses as charged and the jury determines that you are an habitual offender, **you face the potential of being sentenced to five years in prison as to the theft in the second**

**degree charge and five years in prison as to the eluding charge**. Each of those sentences would carry with them a mandatory term of incarceration of three years prior to eligibility for parole. **If those sentences are imposed consecutively, you would be sentenced to ten years in prison, and you would have a mandatory six-year sentence prior to being eligible for parole**.[4] You understand that?

THE DEFENDANT: Yes.

(Emphasis added.)

The trial proceeded. Barnes chose to testify. He stated several days before the chase with the sheriff his own vehicle had broken down in Winnebago County in northern Iowa. At about 2:00 a.m., Barnes decided to take a truck he found with the keys in it (the same truck law enforcement pursued).[5] The next

---

[4] This is a misstatement of the maximum sentence Barnes faced.

> Under the legislature's sentencing scheme for felonies, a person convicted of a class "D" felony, who is not a habitual offender, shall be confined no more than five years, and in addition shall be fined at least $750 but no more than $7500. [Iowa Code] § 902.9(5). Under the same sentencing scheme, a habitual offender shall be confined no more than fifteen years. *Id.* § 902.9(3). A habitual offender includes any person convicted of a class "D" felony who has twice before been convicted of a felony.

*State v. Maxwell*, 743 N.W.2d 185, 190–91 (Iowa 2008). Consequently, if found to be guilty on the charges as a habitual offender, Barnes was subject to two-fifteen year terms of imprisonment. *See* Iowa Code § 908.1. If the sentences were to be served consecutively, Barnes's sentence would be a thirty-year term, substantially greater than the ten years stated by the court.

Neither the State nor the defendant's attorney corrected the court's misstatement.

[5] Barnes's testimony includes the following:

> Q. Okay. When you took the truck, did you think—did you think you were stealing the truck? A. No, I kind of looked at it as borrowing, but I know there was complications, you know.
>
> Q. And can you understand where someone might look at, Hey, a number of days, a period of number of days might look like you weren't intending on taking the vehicle back? A. Yes. Yes.
>
> Q. And did you make arrangements to head back to Buffalo Center? A. I did. I had explained to my ex-girlfriend on—via text that I intended to return to Buffalo Center. I don't recall whether I told her why, but I was going back up there to get my—to fix my truck and to leave again in it.
>
> . . . .

day, Barnes drove the truck across Iowa and into Missouri to move some of his property. Barnes returned to Iowa in the truck, and he went to Des Moines. Barnes again drove south into Madison County, where he was ultimately questioned by the sheriff at the storage unit. Barnes testified he intended to return the truck when he went to retrieve his own: "I had every intention to park the truck back where I got it there in the street, and right around the corner is my truck. If I'm going to be there working on my truck, their truck is just going to basically re-appear." Barnes acknowledged he had exceeded the speed limit by more than twenty-five miles per hour and that the sheriff's vehicle "definitely" had its lights and siren on. He acknowledged he was "running away because [he] didn't want to be arrested." When approached by the sheriff, a topper had been removed from the truck. Barnes also acknowledged that at the time he took the truck, a topper had been in place; the topper "fell off"; and he left it in Des Moines.

Because he was charged with eluding while participating in a public offense, i.e., possessing or controlling stolen property, the defense sought a jury instruction defining "stolen." The court responded: "I think stealing denotes a taking regardless of whether there is an intent to deprive or not. I think the

Q. And you said the vehicle was hot? A. Yes.

Q. What did you mean by that? A. That it may be being looked for. My initial reaction was I actually stole some gasoline the night before in order to get to Buffalo Center. I stopped at a gas station, pumped some gas, and drove off without paying was my initial thought when . . . I was thinking the police were there, that that would be what they were talking about or what they were coming for me for.

Q. Okay. Do you have any knowledge as to whether—how they report stolen gas? A. I just assume they call the police and give them the plate number of the vehicle.

defendant has admitted that taking." The court opined it was unnecessary to define the word "stolen."

Defense counsel argued that felony eluding was not supported by the evidence under legal principles stating neither theft nor possession of stolen property is a continuing offense. Defense counsel argued that possession of stolen property does not apply to the person who has taken the property. The district court denied the motion for partial judgment of acquittal.

With regard to the theft charge, the jury was instructed in Instruction No. 8:

> The State must prove all of the following elements of theft in the second degree:
> 1. A 1991 Chevy pickup truck was stolen.
> 2. On or about the 6th day of November, 2015, the defendant exercised possession or control over the 1991 Chevy pickup truck.
> 3. At the time he exercised possession or control over the 1991 Chevy pickup truck, the defendant knew the property had been stolen.
> 4. The defendant did not intend to promptly return the stolen 1991 Chevy pickup truck to the owner or to deliver it to an appropriate public officer.
> If the State has proved each of these elements, the defendant is guilty of theft. If the State has failed to prove any one of the elements, the Defendant is not guilty of theft.

Instruction No. 9 provided: "In considering whether or not the 1991 Chevy pickup truck was previously stolen as in element 1 of Instruction No. 8, the State does not need to prove the person who stole the property has been convicted of the crime."

Instruction No. 10 states, "'Possession or control' as used in element 2 of Instruction No. 8, means to secure dominion or exert control over an object or to use an object in a manner beyond the person's authority to do so."

As for eluding, Instruction No. 11 provided the State was required to prove all of the following:

> 1. On or about the 6th day of November 2015, the defendant was driving a motor vehicle.
> 2. The defendant willfully failed to bring the motor vehicle to a stop, or otherwise eluded, a marked official law enforcement vehicle driven by a uniformed peace officer after being given a visual and audible signal to stop.
> 3. In doing so the defendant exceeded the speed limit by twenty-five (25) miles per hour or more.
> 4. In doing so, the defendant was participating in a theft, as defined in instruction 9.[6]

Instruction No. 12 provided: "Concerning element 2 of Instruction No. 11, 'willfully' means intentionally or by fixed design or purpose and not accidentally."

And Instruction No. 13 explained,

> Concerning element 4 of Instruction No. 11, a person is participating in" an offense from the period commencing with the first act done directly toward the commission of the offense and for the purpose of committing that offense and terminating when the person has been arrested or has withdrawn from the scene of the intended crime and has eluded pursuers, if any there be.

In closing arguments, the prosecutor argued:

> One thing I do want to talk to you about in number 4 here on Instruction 11, at the time the defendant was participating in a theft as defined in Instruction 9. We've charged Randy Barnes with possession of stolen property.
> Now, if you find that Randy Barnes was possessing that stolen property, which we would submit we submitted that evidence for that, at the time of the eluding, Randy Barnes was participating in that crime, that crime of possession of stolen property. He drove away in the truck that we allege that was stolen and he knew it was stolen. And because he is doing that, because he is participating in that crime, he is guilty of eluding while participating in a theft.

The jury found the defendant guilty as charged.

---

[6] This is an apparent typographical error—as already noted, the elements of theft are found Instruction No. 8.

Barnes then stipulated to having been twice previously convicted of a felony. The court engaged in the following colloquy with Barnes during the stipulation:

> THE COURT: You understand that by tendering of that is effectively a guilty plea, by admitting that you are the same individual alleged by the State to have previously been convicted, that you subject yourself to a sentence, if sentenced to a period of confinement, that you would not be eligible for parole until you served a minimum sentence of three years? You understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. And is it your desire—well, one other thing. You have been convicted of two felonies and there is at least the potential that you could be sentenced to consecutive sentences on the two felony charges.
>
> In the event you are sentenced to consecutive sentences, you would subject yourself to consecutive minimum periods of confinement of three years prior to parole eligibility, in other words, six years before you would be eligible for parole. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

Barnes filed a motion for new trial, which was denied. At the sentencing hearing, the State argued for the imposition of the maximum term of imprisonment:

> Your Honor, as it relates to Count I, we'd ask the Court to impose the maximum sentence allowed by law, which is a five-year term, subject to the habitual offender enhancement with the mandatory minimum of three years. We would ask the Court to impose the minimum fine, court costs and surcharges; that Mr. Barnes be responsible for all attorney's fees; that Mr. Barnes submit a DNA sample; that Mr. Barnes pay restitution in this case, the State given [thirty] days to file statement of pecuniary damages.
>
> As to Count II, theft in the second degree, we'd ask the Court to again impose the maximum sentence as allowed by law, to impose the habitual offender enhancement giving Mr. Barnes a three-year minimum term to serve before he's eligible for parole; the minimum fine, we'd ask the court to impose that with the relevant surcharge, court costs, and that Mr. Barnes be responsible for all his attorney's fees. We'd ask the Court to assess restitution in that matter as well.

Generally speaking, we would ask the Court to impose restitution on Mr. Barnes for all correctional fees incurred pursuant to Iowa Code section 356.7. Your Honor, we would ask that the Court impose those sentences and run them consecutively.

Defense counsel then argued for probation—and for the first time in these proceedings—noted Barnes was subject to a fifteen-year sentence on each charge. The court responded: "Where do we get fifteen years?" Defense counsel and the court then had this discussion on the record:

> [DEFENSE COUNSEL]: It's the habitual offender, Your Honor.
> THE COURT: Well, all that does is provide that he shall not be eligible for parole until he's served a minimum period of confinement of three years.
> [DEFENSE COUNSEL]: Correct, Your Honor, but I think it's still—you would still sentence him to the [fifteen] but the mandatory minimum wouldn't apply.
> THE COURT: Would you agree with that, Mr. Anderson? I think he gets a five-year sentence, and he has to serve three before he's eligible for parole.
> [PROSECUTOR]: No. I believe he gets a [fifteen]-year sentence. He has to serve three before he's eligible for parole.
> THE COURT: Fifteen? So we triple them?
> [PROSECUTOR]: That's correct.
> THE COURT: Okay.

The court entered judgment and imposed consecutive fifteen-year terms.

Barnes appeals, contending there is insufficient evidence to support a theft conviction, and, any theft was complete at the time he fled from the officer so any eluding was not "during the commission of a public offense." In addition, Barnes contends there is insufficient evidence he was in possession of stolen property, the court erred in failing to instruct the jury on the definition of "stolen" and on a lesser-included offense of operating a motor vehicle without the owner's consent, and the court should have granted his motion for judgment of acquittal because the "actual taker of the truck cannot be convicted of possession" of

stolen property. Barnes also maintains trial counsel was ineffective in failing to object to the trial court's misstatement of the maximum sentences that could be imposed, and the trial court did not provide adequate reasons for imposing two fifteen-year sentences, which are to be served consecutively.

## II. Scope and Standards of Review.

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Turner*, 630 N.W.2d 601, 610 (Iowa 2001).

We review constitutional issues, such as a claim of ineffective assistance of counsel, de novo. *State v. Thorndike*, 860 N.W.2d 316, 319 (Iowa 2015).

"A court's decision not to give a requested instruction is reviewed for correction of errors at law." *State v. Huser*, 894 N.W.2d 472, 501 (Iowa 2017).

The sentencing decision of a district court within the statutory limits is "cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the consideration of inappropriate matters." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). "An abuse of discretion will not be found unless we are able to discern that the decision was exercised on grounds or for reasons that are clearly untenable or unreasonable." *Id.* at 725.

## III. Sufficiency of the Evidence.

On a sufficiency-of-the-evidence challenge, we uphold a verdict if a rational fact-finder "could have found that the elements of the crime were established beyond a reasonable doubt." *State v. Keopasaeuth*, 645 N.W.2d 637, 640 (Iowa 2002). This court views the evidence in the light most favorable to the State and considers all reasonable inferences that fairly may be drawn therefrom. *See State v. Acevedo*, 705 N.W.2d 1, 5 (Iowa 2005). "Inherent in our

standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (citation omitted).

Defense counsel argues this case is similar to *Philo*, where the court determined that the defendant was not participating in the felony of theft at the time he was eluding police because the crime of theft by taking was completed when he left the scene of the theft without being pursued, and "there was no evidence that the pursuit was connected to the withdrawal from the crime scene." 697 N.W.2d at 487. We agree with the district court, however, that *Philo* is distinguishable and not applicable because it involved a theft by taking. *Cf. State v. Hearn*, 797 N.W.2d 577, 585 (Iowa 2011) ("The language in *Philo* does not require continuous pursuit commencing from the crime scene, but only requires that if liability is to attach after the accused has left the crime scene, the accused must be 'pursued.'")

Barnes was charged with theft by possession or being in control of stolen property. The questions before us then are: Where was the "crime scene?" and Was Barnes pursued from that location? It is reasonable to determine the crime scene followed Barnes while he was in possession of the stolen truck.

In denying the motion for new trial, the court concluded:

> When that statutory definition of participation in a public offense is read in conjunction with the felony eluding statute, it is clear to me that the intention and purpose of the legislature in making the eluding charge more serious if there is a connection between the underlying felony and the act of the eluding. In other words, the eluding becomes more serious and a higher degree of offense if the person is at the same time committing a felony.
> In this case, based on the defendant's own admission, both from the witness stand and during the telephone call that he had

from the jail, that was also admitted into evidence, it was clear that the defendant's intent in attempting to elude arrest by the sheriff was for the purpose of avoiding detection and apprehension for his possession of stolen property.

Therefore, I believe the jury was appropriately given the opportunity to find the defendant guilty of the felony eluding charge, and there is clearly sufficient basis in the record from which the jury could find him guilty.

We find no error in the court's ruling as it is consistent with the purpose of the statute.

In *Hearn*, 797 N.W.2d at 582-84, the court rejected a defendant's claim that he had withdrawn from the scene of a carjacking before he was chased by police and therefore could not be convicted of eluding while participating in a public offense. The court observed,

[L]imiting the statute to situations involving continuous pursuit of a suspect commencing at the crime scene makes no sense in light of the legislative policy manifest in the language of the statute. . . . The underlying purposes of the statute in this case do not support the distinction that Hearn seeks to draw between continuous pursuit from the crime scene and pursuit that occurs in response to a 911 call and begins in close temporal and geographic proximity to the crime. *See Muscarello v. United States*, 524 U.S. 125, 132–33 (1998) (holding phrase "carrying a firearm" in criminal statute includes driving a car with a gun in the trunk because it would not make sense to penalize one who walks with a gun in a bag, but to ignore a similar individual who drives with the same gun in a bag in his car). The statute must not be construed in a way to defeat its plain public purpose. *State v. Peck*, 539 N.W.2d 170, 173 (Iowa 1995) (stating that statutes must be construed reasonably and in a way not to defeat their plain purpose); *State v. Nelson*, 178 N.W.2d 434, 437 (Iowa 1970) (stating that criminal statutes "are not to be construed so strictly as to defeat the obvious intention of the Legislature").

*Hearn*, 797 N.W.2d at 583-84.

We also reject Barnes's claim that there was not sufficient evidence that he intended to permanently deprive the owner of the truck, negating a finding the

property was "stolen." It is true that for purposes of theft as defined in section 714.1(1), which states that a person commits theft when the person "[t]akes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof." *See State v. Schminkey*, 597 N.W.2d 785, 788-89 (Iowa 1999). Again, however, Barnes was charged and convicted of theft by possession of stolen property. As the trial court noted, Barnes admitted he knew the truck was "hot" when he was chased by law enforcement. At trial, after Barnes testified he took the truck without permission, he testified further:

> Q. All right. Now, fast forwarding to when you came into contact with Sheriff Barnes, you could have just said "I got this truck. I don't—it's not mine. It is stolen. Sorry," right? A. I could have, yes.
> Q. But you didn't? A. That's correct.
> Q. Okay. So you led the officers on a chase in this vehicle knowing that was stolen, right? A. Yes.
> Q. And you exceeded the speed limit by [twenty-five] miles per hour? A. Yes.

There is substantial evidence to support the conviction of eluding while in possession or control of stolen property. The jury was free to reject his further claim he "was returning [the truck]" to the place where he took it. *See Sanford*, 814 N.W.2d at 615.

Barnes also contends the court erred in failing to give an instruction to the jury defining "stolen." We have viewed the defendant's proposed instructions and the instructions given. Read as a whole, the instructions given by the court adequately informed the jury they had to find Barnes exercised control over property he did not own or have permission to use and did not intend to promptly return. *See Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016) ("Iowa

law requires a court to give a requested jury instruction if it correctly states the applicable law and *is not embodied in other instructions*." (emphasis added)).

Barnes contends a person who takes property cannot be found guilty of being in possession of stolen property, citing *State v. Upton*, 167 N.W.2d 625, 627 (Iowa 1969) (stating "a thief is not an accomplice of the person who later receives the stolen property from him"). We are not convinced. In a case in which the defendant was charged with theft by exercising control over stolen property, our supreme court stated:

> This contention ignores the relationship between the act of stealing property and the act of exercising control over stolen property. Under Iowa Code section 714.1 *the former act necessarily encompasses the latter, because one who steals property must exercise control over it and must know that it is stolen.* 4 J. Yeager & R. Carlson, Iowa Practice § 316 at 82 (1979). It was not improper for the jury to consider whether defendant had actually stolen property, because an affirmative finding on that issue would have led to a verdict that defendant was guilty of the offense with which he was charged (theft by exercising control over stolen property, section 714.1(4)).

*State v. Washington*, 356 N.W.2d 192, 195 (Iowa 1984) (emphasis added); *see also State v. Conger*, 434 N.W.2d 406, 409-10 (Iowa Ct. App. 1988). There is substantial evidence to support the convictions.

## IV. Ineffective Assistance of Trial Counsel.

Barnes asserts trial counsel was ineffective in failing to correct the district court's misstatement of the maximum sentences that could be imposed. He contends his decision to reject the State's plea offer was not made knowingly and voluntarily because he did not understand that he was exposing himself to a thirty-year term rather than the ten-year maximum term about which the court advised him. He also contends counsel did not adequately investigate whether

Barnes was represented by counsel or knowingly waived counsel for his prior convictions, which would negate one habitual-offender enhancement. *See State v. Kukowski*, 704 N.W.2d 687, 691-92 (Iowa 2005) (stating the "State must also establish that the defendant was either represented by counsel when previously convicted or knowingly waived counsel"); *see also State v. Johnson*, 770 N.W.2d 814, 825 (Iowa 2009).

To prove a claim of ineffective assistance, Barnes must prove both that counsel breached an essential duty and prejudice resulted. *See Maxwell*, 743 N.W.2d at 195. Ineffective-assistance-of-counsel claims are resolved on direct appeal only when the record is adequate. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

We agree with Barnes's claim the trial court had a duty to inform him of the ramifications of being found a habitual offender. *See* Iowa R. Crim. P. 2.19(9); *State v. Oetken*, 613 N.W.2d 679, 687 (Iowa 2000). While we find the record clear that the district court did misstate the maximum sentences that could be imposed upon a finding Barnes was a habitual offender, the record is inadequate to know if Barnes's counsel had breached an essential duty by incorrectly advising Barnes of the maximum possible punishment before Barnes rejected the plea deal. If counsel fully informed him that he faced possible consecutive fifteen-year terms, Barnes cannot establish the trial court's misstatement resulted in his rejecting the plea offer. Moreover, we do not know what investigation into Barnes's prior felony convictions was conducted by trial counsel and whether those convictions were entered with the assistance of counsel or if Barnes knowingly waived counsel. *See* Iowa R. Crim. P.

2.8(2)(b)(1). But because we are remanding this case for other reasons, those issues can be addressed by the district court on remand.

**V. Is Operating a Motor Vehicle Without the Owner's Consent a Lesser-Included Offense of Theft?**

To determine whether a crime is a lesser-included offense of a greater offense, the court applies the "impossibility test" and asks "whether the greater offense cannot be committed without also committing all elements of the lesser offense." *State v. Miller*, 841 N.W.2d 583, 587-88 (Iowa 2014) (citing *State v. Coffin*, 504 N.W.2d 893, 894 (Iowa 1993), and *State v. Turecek*, 456 N.W.2d 219, 223 (Iowa 1990)). We look at the elements of the marshaling instruction submitted to the jury and compare them with the statutory elements of the proposed lesser-included offense to "determine if the greater offense can be committed without also committing the lesser offense." *Miller*, 841 N.W.2d at 590.

We agree with the district court the offense of operating a motor vehicle without the owner's consent is not a lesser included offense of theft by exercising control over stolen property. The statutory elements for operating without owner's consent are: (1) the defendant took possession or control of an automobile belonging to another; (2) the possession or control was without the consent of the owner; and (3) the defendant did not have the intent to permanently deprive the owner thereof. *See* Iowa Code § 714.7. As noted by the State, the elements for exercising control over stolen property can be met without proving: (1) the property in question was an automobile; (2) who

specifically owned the property; (3) the control over the automobile was without the owner's consent.

## VI. Adequacy of Reasons for Consecutive Sentences.

Barnes asserts the district court provided inadequate reasons for imposing consecutive sentences. In *State v. Hill*, 878 N.W.2d 269, 275 (Iowa 2016), the supreme court held, "Sentencing courts should also explicitly state the reasons for imposing a consecutive sentence, although in doing so the court may rely on the same reasons for imposing a sentence of incarceration." *See also State v. Thacker*, 862 N.W.2d 402, 408 (Iowa 2015) ("While [Iowa Rule of Criminal Procedure 2.23(3)(d)] requires a statement of reasons on the record, a 'terse and succinct' statement may be sufficient, 'so long as the brevity of the court's statement does not prevent review of the exercise of the trial court's sentencing discretion.'" (citation omitted)).

We have reviewed the transcript of the sentencing hearing and the sentencing order and are unable to locate an explicit statement of reasons for imposing consecutive sentences. We therefore vacate the sentencing order and remand for resentencing.

## VII. Summary.

There is sufficient evidence to affirm the convictions for second-degree theft by exercising control over stolen property, in violation of Iowa Code section 714.1(4) and 714.2, and eluding while participating in a felony, in violation of section 321.279(3). The record is inadequate to determine whether the defendant was properly informed of the maximum sentences he faced if convicted as a habitual offender. We remand the case for an evidentiary hearing

to address the voluntariness of Barnes's rejection of the plea offer and the stipulation of prior convictions. *See State v. Hrbek*, 336 N.W.2d 431, 437 (Iowa 1983). If the trial court determines the statements were involuntary, a new trial shall be granted. If not, the convictions shall stand affirmed, and the court shall determine whether the sentences shall be served concurrently or consecutively and specify the reasons for the decision.

**CONVICTIONS AFFIRMED ON CONDITION, SENTENCES VACATED, AND REMANDED WITH INSTRUCTIONS.**