# IN THE COURT OF APPEALS OF IOWA

No. 16-1440
Filed November 21, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TOMAS TOVAR,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Muscatine County, Mark R. Lawson,

Judge.


        Tomas Tovar appeals his conviction for sexual abuse in the third degree.

**AFFIRMED.**



        Philip B. Mears of Mears Law Office, Iowa City, for appellant.

        Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant

Attorney General, for appellee.



        Considered by Danilson, C.J., Vogel, J., and Mahan, S.J.

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**MAHAN, Senior Judge.**

Tomas Tovar appeals his conviction for sexual abuse in the third degree in violation of Iowa Code section 709.4(4) (2013). Tovar brings several challenges on appeal. He contends there is insufficient evidence supporting his conviction, his trial counsel was ineffective in failing to move for judgment of acquittal as it relates to one of the prosecution's alternative theories, the district court erred in permitting the jury to reach its verdict without requiring a unanimous verdict with regard to the prosecutor's alternate theories, and the court erred in submitting jury instructions for lesser-included offenses. For the foregoing reasons, we affirm his conviction.

## I. Background Facts and Proceedings

The events in question unfolded in the early morning hours of Saturday, February 16, 2013. The complaining witness, S.M.,[1] had planned a special getaway with her boyfriend, David Faust, for that weekend. On Friday, S.M. had a few glasses of wine at home before Faust picked her up on the way to the Clarion hotel in Muscatine, arriving around 7:00 p.m.

S.M., Faust, and Faust's friend then traveled to The Pearl, a local Muscatine restaurant. While at The Pearl, S.M. ate a few buffalo wings[2] and drank around three "regular size" long island iced teas.[3] Around 10:00 p.m., the party traveled to The Brew, a bar across the street. S.M. continued to drink, either rum and Cokes

---

[1] We refer to the complaining witness by her initials in this opinion. At trial, she testified she identified herself by her full name in a related civil lawsuit in an effort to express to others that complaining witnesses should not feel ashamed. Our use of her initials is not a comment on this message. Rather, it follows this court's common practice and preserves S.M.'s privacy.

[2] S.M. also had a breakfast sandwich around lunchtime.

[3] At trial, long island iced teas were described as containing multiple types of alcohol.

or long island iced teas. Faust's friends at the bar also bought S.M. multiple shots.[4] While at the Brew, S.M. began to feel extremely intoxicated. The group traveled back to The Pearl to retrieve S.M.'s coat, and then S.M. and Faust left in Faust's vehicle. Faust drove and went through a Taco Bell drive-through. By this time, S.M. was falling asleep in the passenger seat. Upon pulling out of the Taco Bell parking lot, Muscatine police officer Minnat Patel pulled Faust over at around 2:00 a.m. Saturday morning.

Defendant Tovar, then working as a Muscatine police officer, arrived to serve as Officer Patel's backup. Officer Patel initially stopped Faust for driving while barred but suspected Faust was intoxicated. While Patel talked with Faust, Tovar went to the passenger side of the vehicle and stood next to S.M.'s window. Though there is dash camera footage of the traffic stop and audio from Patel's body microphone, Tovar did not have his body microphone on during the encounter. Patel administered several field sobriety tests to Faust and arrested him for driving while barred and operating a vehicle while intoxicated. Tovar then asked Faust where S.M. was staying and offered to drive her to the Clarion Hotel, which was nearby but would require S.M. to cross a major roadway.

Patel's dash camera shows S.M. get out of the car with significant difficulty. She got into Tovar's squad car for the trip to the Clarion. Like the body microphone, Tovar's squad car's audio recording system did not engage, and there is no audio recording from the trip. Tovar escorted S.M. into the hotel and into her room. While in the room, Tovar engaged S.M. in vaginal intercourse. Tovar then

---

[4] S.M. described shots as "really high alcohol concentrated small little things that you just take like medicine."

radioed in to police dispatch to indicate he was "clear" of the call though he stayed and continued to engage S.M. in intercourse. Shortly after, he received a call to a domestic-disturbance incident and left the hotel. Once Tovar returned to the police station, he told others that S.M. was so intoxicated she could not carry her own belongings and broke the hotel key-card while trying to open the door, requiring him to get a new key from the hotel's front desk. He made no mention of the intercourse.

After being released from police custody, Faust returned to the Clarion hotel. Upon his return, he found S.M. in the nude and asleep on top of the bed's covers. The scene startled him because S.M. typically did not sleep this way. When Faust woke S.M. she was confused, had little memory of the prior evening's events, and was still intoxicated. S.M. began to have fragmented memories of the prior night and remembered the feeling of another person on top of her and a harsh feeling material against her skin. Upon this revelation, Faust grew concerned that the officer who drove S.M. to the hotel assaulted her. S.M. maintained she could not confidently say she had intercourse with someone given the poor state of her memory.

Faust called the police station with his concerns around 5:30 a.m. Lieutenant Anthony Kies, Tovar's supervisor, then confronted Tovar with Faust's allegation. Tovar suggested he should talk to S.M. to clear things up, emphasizing she was very intoxicated and was likely just mistaken. Faust called the station again, this time talking with Kies. Faust shared the details S.M. could remember from the night before, including the harsh feeling material against her skin. Kies had his phone on speaker during the conversation, and Tovar was also in his office.

At the end of the phone call, Kies told Faust he would meet Faust and S.M. at the Clarion. Upon hearing this statement, Tovar's demeanor changed and he removed his outer vest. Kies had Tovar follow him out to the Clarion hotel and wait outside. At the Clarion, S.M. prepared for Kies's arrival by putting on her clothes from the evening before.

Kies first stopped at the hotel's front desk to inquire about the broken key-card. Once Tovar became aware that Kies visited the front desk, he admitted to Kies that he made up the story about S.M. breaking her key-card and suggested he embellished his story to add interest. When Kies met with S.M. and Faust, it was apparent to him that S.M. was still intoxicated and too drunk to go into the police station at that time, around 6:00 a.m. Kies contacted Tovar in the parking lot and instructed him to get out of the vehicle, Tovar complied and removed his glasses. Kies asked S.M. to look out the window at Tovar and asked if she recognized him from the night before. S.M., afraid of what Faust would do, failed to identify Tovar. Kies took S.M. to look at the front desk attendant to see if he was her assailant. Once out of Faust's presence, S.M. told Kies she recognized Tovar but said she did not want to identify him in front of Faust.

Because S.M. was still intoxicated, Kies made arrangements for her and Faust to come into the police station around 10:30 a.m. S.M. and Faust arrived at the police station to make a statement. While there, an officer visited the hotel room, took photographs, retrieved S.M.'s suitcase, and collected the bedsheets. Once the officer brought the suitcase into the station, S.M. identified the clothing she had on the night before, the same clothing she put on earlier that morning when Kies visited. The identified clothing and bed sheets were then preserved for

forensic testing. S.M. could provide little detail about the prior evening. She had difficulty remembering her time at The Brew and the following events. She refused to definitively say she had intercourse with anyone the night before because she could not concretely remember anything, instead she just had flashes of memory.

Due to a possible conflict of interest, Kies turned over the investigation to the Iowa Division of Criminal Investigation (DCI). Special Agent Richard Rahn collected the preserved clothing and bedding from the Muscatine Police and sent it to the DCI testing facility. Tovar's seminal fluid was found on both the fitted sheet and on the interior crotch of S.M.'s jeans. Upon this discovery, Tovar was charged with sexual abuse in the third degree.

The case proceeded to a jury trial; S.M. and Tovar both testified. S.M. maintained she had little memory of the night. Tovar admitted to the sexual intercourse but maintained S.M. was not intoxicated and was a willing participant. Tovar also presented expert testimony regarding memory lapses due to intoxication. The expert indicated there are two types of blackouts: one described as a brown out or fragmentary, which allows the individual to remember short blips or details, and the other called an en block, which prevents the individual from remembering anything from the period of intoxication. The jury found Tovar guilty of third-degree sexual abuse due to sexual contact with S.M. while S.M. was either physically helpless or mentally incapacitated. Tovar now appeals.

## II. Standard of Review

We review Tovar's challenge to the sufficiency of the evidence supporting his conviction for correction of errors at law. *See State v. Keeton*, 710 N.W.2d 531, 532 (Iowa 2006). We review Tovar's claim of ineffective assistance of counsel

de novo. *See State v. Harrison*, 914 N.W.2d 178, 188 (Iowa 2018). We also review Tovar's challenges to the jury instructions for corrections of errors at law. *See id.*

## III. Analysis

Tovar claims there is insufficient evidence supporting his conviction. He also argues his trial counsel was ineffective in failing to move for judgment of acquittal arguing there was insufficient evidence to conclude S.M. was physically helpless. He claims the district court erred in not requiring the jury reach a unanimous verdict regarding the alternate theories of physical helplessness and mental incapacity. He also argues the court erred in submitting instructions for lesser included offenses to the jury. We will address each claim in turn.

### A. The Sufficiency of the Evidence Supporting Tovar's Conviction

To convict Tovar of third-degree sexual abuse, the marshalling instruction required the jury find the following:

1. On or about February 16, 2013, in Muscatine County, Iowa, the defendant performed a sext act on [S.M.]
2. The defendant performed the sex action while [S.M.] was mentally incapacitated or physically helpless and the defendant knew or reasonably should have known that [S.M.] was mentally incapacitated or physically helpless.

On appeal, this instruction is "the law of the case." *See In re Estate of Workman*, 903 N.W.2d 170, 175 (Iowa 2017) ("When instruction are not objected to, they become 'the law of the case.'" (quoting *Hoskinson v. City of Iowa City*, 621 N.W.2d 425, 430 (Iowa 2001))); *accord State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009). Tovar admits a sex act occurred and only challenges the jury's finding with regard to the second element.

"A jury verdict finding of guilt will not be disturbed if there is substantial evidence to support the finding." *State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015). Evidence is substantial if it would "convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt." *Id.* (quoting *State v. Torres*, 495 N.W.2d 678, 681 (Iowa 1993)). We consider all evidence, but we view the record in the light most favorable to the State. *See id.* Further, "[w]e draw all fair and reasonable inferences that may be deduced from the evidence in the record." *State v. Meyers*, 799 N.W.2d 132, 139 (Iowa 2011). When reviewing the sufficiency of the evidence, circumstantial evidence is as probative as direct evidence. *See id.*

### 1. Mental Incapacitation

We first address the sufficiency of evidence supporting a finding of S.M.'s mental incapacity. Jury instructions clarified "'mentally incapacitated' means that a person is temporarily incapable of apprising or controlling the person's own conduct due to the influence of an intoxicating substance." With this instruction guiding our analysis, we review the available evidence.

When considered in the light most favorable to the State, a review of the evidence reveals substantial evidence supporting a finding of S.M.'s mental incapacitation. Tovar concedes the record supports a finding of intoxication but argues it fails to demonstrate S.M. was so intoxicated she was incapable of apprising or controlling her own conduct. Tovar is mistaken. S.M. testified to the large quantity of alcohol she consumed over the course of the evening and the little amount of food she had to eat. She cannot remember most of the evening. According to Tovar's expert witness, this memory loss is consistent with a form of

memory black out, a brown out, due to extremely high alcohol consumption. S.M. testified she was either passing out or falling asleep in Faust's vehicle when he was pulled over. Dash camera footage shows S.M. exit Faust's vehicle as she struggles to stand and control herself, stumbling back from the front-passenger door all the way towards the cargo area of Faust's sport-utility vehicle as she attempts to close the door. Officer Patel described S.M. as having "extreme difficulty maintaining balance" and indicated she "almost tripped over her own feet." S.M. was still intoxicated when Officer Kies arrived at the hotel hours after the sex act occurred. When he arrived back at the police station, Tovar also told other officers about S.M.'s extreme intoxication and inability to carry her personal items into the hotel. While Tovar testified he made up his story to explain why he was at the hotel for an extended period of time, the jury was free to reject Tovar's explanation and instead believe the statements he made shortly after the encounter. A jury could consider S.M.'s substantial alcohol consumption, loss of memory, inability to stay awake mere minutes before her contact with Tovar, inability to stand and control herself as she closed the vehicle door, lingering intoxication into the morning, and Tovar's own incriminating statements that S.M. needed help to get into the hotel to infer she was incapable of apprising or controlling her own conduct due to her intoxication during the sex act. *See id.* (permitting juries reach fair and reasonable inferences).

Further, a jury could conclude Tovar knew or should have known S.M. was mentally incapacitated. Tovar asked Faust, not S.M., where to take S.M. upon Faust's arrest. A reasonable juror could conclude he asked Faust, rather than S.M., because he knew she was incapable of providing an answer due to her

extreme level of intoxication. He also observed her difficultly exiting Faust's vehicle, indicating her inability to control her conduct. Tovar also told other officers about S.M.'s extreme intoxication and inability to enter the hotel unaided. When considering this evidence in the light most favorable to the verdict, there is sufficient evidence supporting Tovar's conviction on the basis of mental incapacitation.

### 2. Physical Helplessness

We next assess whether there is sufficient evidence of S.M.'s physical helplessness to support Tovar's conviction. The State argues Tovar failed to preserve error on this issue by failing to bring a motion for judgment of acquittal claiming insufficient evidence of physical helplessness. Error is preserved through a motion for judgment of acquittal and only the specific basis alleged in the motion is preserved on appeal. *See State v. Brubaker*, 805 N.W.2d 164, 170 (Iowa 2011) (requiring a defendant file a motion for judgment of acquittal identifying specific grounds for dismissal to preserve error on appeal when claiming insufficient evidence); *State v. Schertz*, 328 N.W.2d 320, 321 (Iowa 1982) (limiting review to specific basis alleged in motion for judgment of acquittal).

Tovar's trial counsel stated:

> We would renew our motion for judgment of acquittal as to the sex abuse. On the issue of against the will or—well, I think we took that out. On the issue of her alleged incapacity. If mentally incapacitated or physically incapacitated on the basis we don't believe they've established—provided sufficient evidence to raise the jury question on the issue of whether she was incapacitated physically or mentally.

The only relevant reference in the motion is to mental incapacity. While the motion also mentions physical incapacitation, this is a third and distinct basis for conviction

of third-degree sexual abuse not at issue in this case. *See* Iowa Code § 709.4(4) (criminalizing sexual acts when, "[t]he act is performed while the other person is mentally incapacitated, physically incapacitated, or physically helpless"); *see also id.* § 709.1A(3) ("Physically incapacitated" means that a person has a bodily impairment or handicap that substantially limits the person's ability to resist or flee."). Because Tovar's motion did not specifically challenge the sufficiency of the evidence supporting a finding of physical helplessness, he has not preserved error on this issue.

### B. Ineffective Assistance of Counsel

He asserts his trial counsel was ineffective in failing to preserve error by failing to specifically challenge the sufficiency of the evidence of physical helplessness in the motion for judgment of acquittal.[5] "Failure of trial counsel to preserve error at trial can support an ineffective-assistance-of-counsel claim." *Brubaker*, 805 N.W.2d at 170. Ineffective-assistance-of-counsel claims are an exception to our error preservation rules. *See State v. Lucas*, 323 N.W.2d 228, 232 (Iowa 1982). To succeed under the ineffective-assistance-of-counsel framework, Tovar must show counsel failed to perform an essential duty and resulting prejudice. *See Brubaker*, 805 N.W.2d at 171; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). If Tovar is unable to prove either element by a preponderance of the evidence, then his claim fails. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). Of course, we will not conclude counsel was

---

[5] Tovar asserts counsel was ineffective in failing to move for a directed verdict. We interpret this reference to a motion for directed verdict as a motion for judgment of acquittal.

ineffective for failing to raise a meritless claim. *See State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015).

We must consider the merits of Tovar's underlying claim: whether there was sufficient evidence of S.M.'s physical helplessness. The marshalling instruction permitted the jury to convict Tovar based on S.M.'s physical helplessness during the sex act. The jury instructions clarify "'physically helpless' means that a person is unable to communicate an unwillingness to act because the person is unconscious, asleep, or otherwise physically limited." Tovar argues there was insufficient evidence of S.M.'s physical helplessness. Reviewing the evidence in the light most favorable to the State, we conclude there is sufficient evidence of S.M.'s physical helplessness. S.M. testified she was either passing out or falling asleep in Faust's car when Officer Patel pulled Faust over. This was just before Tovar drove S.M. to the hotel and engaged her in intercourse. Most critically, S.M. testified that while in the hotel room with Tovar, she remembers feeling as though she "couldn't really physically do anything." From this evidence, the jury could reasonably conclude S.M. was physically helpless during the sex act. Because there is sufficient evidence supporting a finding of physical helplessness, Tovar's trial counsel was not ineffective in failing to argue insufficient evidence of physical helplessness in the motion for judgment of acquittal. *See id.*

**C. Unanimity With Regard to Alternative Theory Supporting Conviction**

Tovar argues the district court erred in submitting the following instruction:

> When two or more alternative theories are presented, or where two or more facts would produce the same result, the law does not require each juror to agree as to which facts lead to his or her

> verdict. It is the verdict itself which must be unanimous, not the theory or fact upon which it is based.

This instruction is a correct statement of the law. *See State v. Bratthauer*, 354 N.W.2d 774, 776 (Iowa 1984) (permitting jurors to embrace different theories of the crime so long as the theories are not repugnant on one another); *State v. Retterath*, No. 16-1710, 2017 WL 6516729, at *13 (Iowa Ct. App. Dec. 20, 2017) (permitting the jury embrace different theories of the crime so long as they are not repugnant of one another); *Wright v. State*, No. 16-0275, 2017 WL 1401475, at *5 (Iowa Ct. App. Apr. 19, 2017) (concluding jurors can reach different conclusions with regard to the means of committing the crime); *State v. Rodriguez*, No. 14-0424, 2015 WL 4158765, at *7 (Iowa Ct. App. July 9, 2015) (noting unanimity in the mode of the crime is not required so long as there is sufficient evidence supporting each mode and they are not repugnant of each other). However, Tovar argues the instruction is inapplicable to the instant case because the two theories, mental incapacitation and physical helplessness, are repugnant to each other, necessitating unanimity as to which alternative was used to commit the offense.

The crux of Tovar's claim "is the principle that the unanimity rule requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." *See State v. Silva*, No. 17-0802, 2018 WL 1858294, at *4 (Iowa Ct. App. Apr. 18, 2018) (quoting *Bratthauer*, 354 N.W.2d at 776) (internal quotations omitted). To determine if the jury was required to reach a unanimous verdict as to which alternative it relied upon, we first consider if the applicable statute provides multiple ways to commit one offense or defines multiple offenses. *See State v. Conger*,

434 N.W.2d 406, 409 (Iowa Ct. App. 1988). Here Iowa Code section 709.4(4) provides alternative means of committing a single offense, third-degree sexual abuse, not multiple offenses, and our first consideration is satisfied. Second, we must confirm substantial evidence supports both alternatives. *See Silva*, 2018 WL 1858294, at *4. As discussed above, substantial evidence supports both alternatives.

Finally, we consider whether these alternatives are consistent with each other and not repugnant. *See Conger*, 434 N.W.2d at 409. "The two alternatives used in this case are consistent in that they merely describe different situations that are considered [sexual abuse in the third degree]." *See id.* A person cannot commit third-degree sexual abuse under either alternative without performing a sex act on another when that person is unable to consent, "so the two are not inconsistent." *Cf. id.* Tovar argues each alternative cannot be reconciled with the other because mental incapacity implies the person is awake while physical helpless implies the person is asleep or unconscious. However, one could imagine a scenario where a person was both mentally incapacitated and physically helpless; the two are not always mutually exclusive of each other. Further, these two alternatives are "consistent with and not repugnant to each other" because both seek to prohibit sexual conduct when one party is unable to consent to the conduct. *Cf. id.*; *Silva*, 2018 WL 1858294, at *6 (finding statutes are not repugnant of each other because both seek to protect people from nonconsensual sex acts).

Because the alternative theories are not inconsistent or repugnant, the district court did not violate the rule of unanimity and err in submitting the instruction permitting the jury to rely on different alternatives in reaching their verdict.

**D. Jury Instructions on Lesser Included Offenses**

Finally, Tovar challenges the inclusion of jury instructions for assault with intent to commit sex abuse and assault as lesser included offenses of sexual abuse in the third degree. He contends these are not lesser included offenses of third-degree sexual abuse under Iowa Code section 709.4(4) and their instruction misled the jury as to the elements of third-degree sexual abuse. However, we need not determine whether these instructions were properly given; Tovar is not entitled to relief. "Errors in jury instructions are presumed prejudicial unless 'the record affirmatively establishes there was no prejudice.'" *State v. Murray*, 796 N.W.2d 907, 908 (Iowa 2011) (quoting *State v. Hanes*, 790 N.W.2d 545, 551 (Iowa 2010)).

No prejudice resulted from the inclusion of the lesser-included-offense instructions because Tovar was convicted of the greater offense. "The general rule applies that when a defendant is convicted of a greater offense he cannot complain of the fact the jury was permitted to consider his guilt of a lesser offense." *State v. Douglas*, 485 N.W.2d 619, 623 (Iowa 1992); *accord State v. Musedinovic*, No. 10-0381, 2011 WL 768801, at *4 (Iowa Ct. App. Mar. 7, 2011) (finding no prejudice when defendant challenged the inclusion of a lesser-included-offense instruction as improper but was convicted of the greater offense). A review of the submitted jury instructions supports this conclusion. "We do not consider an erroneous jury instruction in isolation, but look at the jury instructions as a whole." *Murray*, 796 N.W.2d at 908 (citing *State Fintel*, 689 N.W.2d 95, 104 (Iowa 2004)). Additionally, "[w]e presume the jury follows the court's instructions." *State v. Hanes*, 790 N.W.2d 545, 552 (Iowa 2010). The marshaling instruction for third-

degree sexual abuse made clear the jury should only consider the lesser included offenses if it found the State failed to prove an element of third-degree sexual abuse; here the jury found all elements of third-degree sexual abuse satisfied. Assuming, as we must, the jury followed the instruction, it did not go on to consider the instructions for the lesser included offenses during its deliberation and Tovar was not prejudiced.

## IV. Conclusion

There was sufficient evidence to support Tovar's conviction under both submitted alternatives. Because there was sufficient evidence supporting a finding of physical helplessness, Tovar's trial counsel was not ineffective in failing to base the motion for judgment of acquittal on this basis. The alternative theories were not inconsistent or repugnant to each other, so the court did not err in permitting the jury to rely on different alternatives. Finally, because Tovar was convicted of the greater offense, he was not prejudiced by the inclusion of lesser-included-offense instructions.

**AFFIRMED.**